OPINION
{¶ 1} Appellant, Meadowbrook Care Center, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Department of Job and Family Services ("ODJFS"), which determined that appellant must repay $95,666.79 in Medicaid provider overpayments. For the following reasons, we affirm the judgment of the common pleas court. *Page 2 
 {¶ 2} Appellant operates a long-term care facility, providing room and board services and related nursing care services to persons eligible for benefits under Ohio's Medical Assistance Program, commonly known as the "Medicaid" program. ODJFS administers the Medicaid program pursuant to R.C. Chapter 5111 and Title XIX of the Social Security Act.
 {¶ 3} On March 26, 2004, ODJFS notified appellant of its proposed adjudication order to implement the final fiscal audit for fiscal year 2002 (from July 1, 2001 to June 30, 2002), which resulted in a finding that appellant owed $107,815 for overpayment of room and board Medicaid reimbursements. Following appellant's submission of further documentation, ODJFS reduced the amount of overpayment to $95,666.79. Appellant did not assent to this figure and exercised its statutory right to a hearing.
 {¶ 4} The hearing examiner concluded the $95,666.79 overpayment was correct and recommended that ODJFS implement the proposed adjudication order as written. Appellant timely objected. On May 20, 2005, ODJFS issued an adjudication order adopting the hearing examiner's report and recommendation. ODJFS accordingly concluded that appellant owed $95,666.79 for fiscal year 2002.
 {¶ 5} Pursuant to R.C. 119.12, appellant appealed from the adjudication order to the common pleas court. Appellant asserted the adjudication order was not supported by reliable, probative, and substantial evidence and was not in accordance with law. Appellant further alleged the hearing examiner was biased in favor of ODJFS, thereby depriving appellant of due process.
 {¶ 6} On April 14, 2006, the common pleas court filed a decision rejecting appellant's due process argument. On August 7, 2006, the court filed a "Decision on *Page 3 
Merits of Appeal and Final Judgment." Therein, the court concluded the adjudication order was supported by reliable, probative, and substantial evidence and was in accordance with applicable law and journalized its April 14, 2006 decision.
 {¶ 7} Appellant appeals from this judgment and has asserted the following three assignments of error:
 ASSIGNMENT OF ERROR I:
 THE TRIAL COURT ERRED IN CONCLUDING THAT DJFS COMPLIED WITH STATUTORY AND ADMINISTRATIVE REGULATIONS.
 ASSIGNMENT OF ERROR II:
 THE TRIAL COURT ERRED IN CONCLUDING THAT THE ADMINSTRATIVE DECISION WAS SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE.
 ASSIGNMENT OF ERROR III:
 THE TRIAL COURT ERRED IN CONLCUDING [SIC] THAT MEADOWBROOK HAD NOT BEEN DENIED DUE PROCESS OF LAW.
 {¶ 8} In an administrative appeal pursuant to R.C. 119.12, the common pleas court considers the entire record and determines whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 110-111. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quotingAndrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280. Furthermore, even though the *Page 4 
common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the agency's findings are not conclusive. Univ. of Cincinnati, supra, at 111.
 {¶ 9} On appeal to this court, the standard of review is more limited. Unlike the common pleas court, a court of appeals does not determine the weight of the evidence. Rossford Exempted Village School Dist. Bd. ofEdn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the common pleas court's determination that the agency's order is supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the common pleas court abused its discretion. Roy v. Ohio State Med. Bd. (1992), 80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. However, on the question of whether the agency's order is in accordance with law, this court's review is plenary. Univ. Hosp.,Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343.
 {¶ 10} In Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, the court defined the evidence required by R.C. 119.12
as follows:
 * * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. (Footnotes omitted).
 {¶ 11} We will accordingly examine appellant's three assignments of error to determine whether the Franklin County Court of Common Pleas abused its discretion in *Page 5 
finding that the order of ODJFS is supported by reliable, probative, and substantial evidence and is in accordance with law.
 {¶ 12} Appellant's first and second assignments of error present interrelated issues and will be addressed together. Appellant asserts that ODJFS did not perform a complete audit for appellant's 2002 fiscal year as required by applicable statutes and regulations, and that the agency's order is therefore not in accordance with law. ODJFS disagrees with appellant's interpretation of what level of audit is required. ODJFS in addition asserts that the more thorough audit demanded by appellant would have been irrelevant to the final determination in this case, since ODJFS accepted without dispute most cost figures submitted by appellant, and appellant has not specifically pointed out in this appeal which figures relied upon by ODJFS would have been contested based upon the results of an audit.
 {¶ 13} The parties agree that Medicaid reimbursement in cases such as this may, in the roughest terms, be separated into two components: room and board services provided to residents, and billing for other types of services (such as additional therapy) provided by a nursing facility to a Medicaid recipient. The two components are reimbursed under different methods by ODJFS. Room and board is paid by ODJFS to a facility under an anticipated or estimated system by which a provisional amount is paid to the provider, subject to an eventual reimbursement from the provider to ODJFS of any overpaid provisional amounts after a final assessment of factors such as patient-days and daily rates during the time service is actually provided. Other costs, on the other hand, are paid by ODJFS only upon payment of actual billing by a facility after provision of the actual services. *Page 6 
 {¶ 14} ODJFS in the present case did not dispute the cost report submitted by appellant for non-room-and-board services. The proposed adjustment reflected overpayments by ODJFS for room and board. Before the hearing examiner, ODJFS presented testimony establishing that a room and board computation is based on three fundamental variables: the daily rate for room and board, the number of patient-days provided by a facility, and residents' own liability for such room and board costs, since Medicaid is a "payer of last resort" that only assumes payment beyond amounts for which residents are personally liable. ODJFS based its adjustment in the present case on various discrepancies, primarily comprising patient-days that were claimed by appellant, but also by another provider, such as hospice or hospital, for the same patient. These included days on which patients left appellant's facility for treatment elsewhere, or for which hospice costs were reimbursed directly to a hospice provider who furnished such care to a resident in appellant's facility. ODJFS concedes that the proposed adjustments are based less upon a review of appellant's own records than upon a comparison and reconciliation with ODJFS records of amounts paid to other providers for appellant's residents.
 {¶ 15} Appellant does not specifically contest the computations undertaken by ODJFS in formulating the proposed adjustment and repayment by appellant of amounts previously paid by ODJFS for room and board. Appellant's arguments in this appeal are entirely based on ODJFS' purported non-compliance with statutory and regulatory requirements to conduct a final audit for reimbursement year 2002, including a review of appellant's books and documentation, pursuant to generally accepted accounting standards ("GAAS"). Appellant relies on R.C. 5111.06 to support its contention that a *Page 7 
more detailed and thorough audit must necessarily be conducted under GAAS standards before ODJFS may issue an adjudication order demanding reimbursement:
 * * * (B) Except as provided in division (D) of this section, the department shall do either of the following by issuing an order pursuant to an adjudication conducted in accordance with Chapter 119, of the Revised Code:
 * * * (2) Take any action based upon a final fiscal audit of a provider.
 {¶ 16} Appellant further points to R.C. 5111.27 setting a minimum standard for such audits of Medicaid nursing facilities:
 (A) The department of job and family services shall conduct a desk review of each cost report it receives under section 5111.26 of the Revised Code. Based on the desk review, the department shall make a preliminary determination of whether the reported costs are allowable costs. The department shall notify each nursing facility and intermediate care facility for the mentally retarded of whether any of its costs are preliminarily determined not to be allowable, the rate calculation under sections 5111.23 to 5111.257 of the Revised Code that results from that determination, and the reasons for the determination and resulting rate. The department shall allow the facility to verify the calculation and submit additional information.
 (B) The department may conduct an audit, as defined by rule adopted by the director of job and family services in accordance with Chapter 119. of the Revised Code, of any cost report and shall notify the nursing facility or intermediate care facility for the mentally retarded of its findings.
 Audits shall be conducted by auditors under contract with or employed by the department. The decision whether to conduct an audit and the scope of the audit, which may be a desk or field audit, shall be determined based on prior performance of the provider and may be based on a risk analysis or other evidence that gives the department reason to believe that the provider has reported costs improperly. A desk or field audit may be performed annually, but is required whenever a provider does not pass the risk analysis tolerance factors. *Page 8 
 * * *The department shall establish an audit manual and program which shall require that all field audits, conducted either pursuant to a contract or by department employees:
 (1) Comply with the applicable rules prescribed pursuant to Titles XVIII and XIX of the "Social Security Act," 49 Stat. 620 (1935), 42 U.S.C.A. 301, as amended;
 (2) Consider generally accepted auditing standards prescribed by the American institute of certified public accountants; * * *
 {¶ 17} Ohio Adm. Code 5101:3-1-27 promulgated pursuant to the statute generally tracks the statutory language above:
 * * * (B) For purposes of this rule, the following definitions apply:
 (1) "Audit" means a formal postpayment examination made in accordance with generally accepted auditing standards, of a medicaid provider's records and documentation to determine program compliance, the extent and validity of services paid for under the medicaid program and to identify any inappropriate payments. The department shall have the authority to use statistical methods to conduct audits and determine the amount of overpayment. An audit may result in a final adjudication order by the department.
 {¶ 18} Since ODJFS fully agreed at the administrative hearing that it had not extensively reviewed appellant's records before proposing an adjustment to the room and board payments, and had not challenged at all appellant's 2002 cost report addressing reimbursement for items other than room and board, the question before us is extremely narrow: we must consider whether the basic "days audit" conducted by ODJFS, consisting largely of the comparison of claimed room-days reimbursed to other providers for periods in which residents shuttled between appellant's facilities and others, satisfies R.C. 5111.06(B)(2) and may serve as the basis for an adjudication order. The hearing *Page 9 
officer found that ODJFS characterized the basis for its proposed adjudication as a final fiscal audit. He further concluded that the documentation and data relied upon in preparing the proposed order are sufficiently set forth to comply with GAAS requirements because all figures are drawn upon identified sources of data used to calculate Medicaid patient-days payable to appellant, the amount allocated as payable by the patients themselves giving rise to the net payment due from ODJFS to appellant, and actual amounts tendered by ODJFS to appellant.
 {¶ 19} Appellant has provided no authority for the proposition that Ohio Adm. Code 5101:3-1-27, titled "review of provider records," sets a mandatory standard defining the audit format applicable in all cases as a necessary prerequisite to any order seeking a repayment. As the hearing officer noted, it is difficult to support the proposition that ODJFS violated GAAS by relying on those documents presented by Meadowbrook, rather than going into further examinations of documents not supplied by Meadowbrook, even if Ohio Adm. Code 5101:3-1-27 were applicable before issuance of the present order. Appellant's position is further undermined by the fact that because the case focuses exclusively on patient days and reimbursement, rather than on other costs presented for recovery by appellant in its cost report, which ODJFS chose not to contest in any event, a full review of either cost report items or other documentation that was not put forward by appellant in opposition to repayment of any overpayment constitute any failure on the part of ODJFS to comply with applicable statutes, regulations, or GAAS.
 {¶ 20} In addition, appellant presents no argument on appeal to dispute the characterization that ODJFS gives to the proposed offset reductions in the repayment order. ODJFS describes the amounts that appellant attempted to apply against the *Page 10 
$95,666.79 due on the proposed adjudication order as either representing cost report items (rather than room and board payments) for fiscal year 2002, or even for other fiscal years, specialized adjustments that had already been granted by ODJFS, or therapy claims that were never submitted for payment and were now time-barred.
 {¶ 21} The court of common pleas ultimately concluded that the hearing examiner's decision was supported by reliable, substantial, and probative evidence and was in accordance with the law. We find that the court of common pleas did not abuse its discretion in its conclusion, and we specifically find that ODJFS audit procedures in undertaking the limited adjustments proposed in its adjudication order complied with R.C. 5111.06 and 5111.27, and that the comprehensive on-site audit now invoked by appellant as a prerequisite to any adjudication order was not required "where the only matter genuinely in controversy is a limited portion of the state's reimbursements." (Trial court order, at 6.)
 {¶ 22} Appellant's first and second assignments of error are accordingly overruled.
 {¶ 23} Appellant's third assignment of error asserts that the hearing examiner in this matter demonstrated such extraordinary bias in favor of ODJFS that appellant was denied its right to due process in the administrative proceedings. "There is a presumption of honesty and integrity on the part of an administrative body unless there is a showing to the contrary, and the party alleging a disqualifying interest bears the burden of demonstrating that interest to a reviewing court."Ohio State Bd. of Pharmacy v. Poppe (1988), 48 Ohio App.3d 222. While appellant concedes that it did not file any objection to the appointed hearing examiner prior to the hearing, it asserts that, first, there is no administrative procedure that provides for disqualification of the hearing examiner under *Page 11 
these circumstances, and second, that the examiner's bias did not become apparent until his report issued.
 {¶ 24} The court of common pleas concluded, after examining the transcript of the hearing and the record associated therewith, as well as the final decision of the hearing examiner, that the examiner did not "become an advocate for the department" as alleged by appellant.
 {¶ 25} Because appellant does not assert on appeal that the court of common pleas applied an incorrect legal standard, our review on this issue is purely on the question of whether the court of common pleas did abuse its discretion in finding that there was no showing of a persistent and pernicious bias that would require reversal of the examiner's decision. While due process entitles an individual before an administrative tribunal to receive a fair hearing before an impartial tribunal, a showing of substantial personal bias will be required before a hearing officer may be disqualified or the results of the hearing vacated. In practice this means a personal bias so extreme as to display clear inability to render a fair judgment. Staschak v State Med. Bd. ofOhio, Franklin App. No. 03AP-799, 2004-Ohio-4650.
 {¶ 26} We begin by noting the utterly necessary rule that the outcome of a judicial proceeding alone may not stand as proof of bias or partiality. Liteky v. United States (1994), 510 U.S. 540,114 S.Ct. 1147. Appellant has now submitted an affidavit purporting to compile a statistical breakdown of all of the particular hearing examiner's prior hearing outcomes, and thereby attempts to demonstrate that the hearing examiner has ruled so rarely against any state agency or board that a lack of bias is statistically impossible. This, in fact, calls for us to make a conclusory determination of bias based *Page 12 
upon judicial outcome which would represent merely a statistical extrapolation of the outcome-supported by claims though clearly frowned upon in Liteky. It is impossible for this court to conclude, in the absence of any corroborating evidence and procedural context regarding the proceedings in which the hearing examiner has purportedly found in favor of state agencies, whether those determinations were in fact in favor of agencies, whether they were warranted or not by the merits of the matter before the examiner, and ultimately whether the outcome reflected in the resulting hearing examiner's report did anything less than reflect the relative merits of the arguments put forth by the parties in those matters.
 {¶ 27} In conclusion, because we agree with the hearing examiner's assessment of the law and facts in the matter, and because the fact that counsel for appellant disagrees with this particular hearing examiner in this and a number of other hearing outcomes does not help appellant, we find that appellant has failed to establish a showing of bias that would amount to a deprival of due process in this particular case. Because we find that the court of common pleas did not abuse its discretion in finding that the hearing examiner displayed neither prejudice nor partiality in the consideration of the matter and resulting order, appellant's third assignment of error is overruled.
 {¶ 28} In summary, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas upholding the order in favor of appellee, Ohio Department of Jobs and Family Services, is affirmed.
Judgment affirmed.
 BRYANT AND BROWN, JJ., concur. *Page 1