[Cite as *Puterbaugh v. Goodwill Industries of the Miami Valley, Inc.*, 2014-Ohio-2208.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

KELLY PUTERBAUGH                         :

      Plaintiff-Appellant                  :          C.A. CASE NO.    2013 CA 39

v.                                       :          T.C. NO.    13-283

GOODWILL INDUSTRIES OF THE MIAMI
VALLEY, INC., et al.                     :       (Civil appeal from
                                           Common Pleas Court)

      Defendants-Appellees                 :

                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____23rd_____ day of _____May_____, 2014.

. . . . . . . . . .

KELLY PUTERBAUGH, 312 E. North Street, Piqua, Ohio 45356
      Plaintiff-Appellant

ROBIN A. JARVIS, Atty. Reg. No. 0069752, Assistant Attorney General, Ohio Attorney
General's Office, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202
      Attorney for Defendant-Appellee, Director, Ohio Department of Job and Family
      Services

ANTHONY J. CARUSO, Atty. Reg. No. 0040773 and REBECCA L. CULL, Atty. Reg. No.
0083542, PNC Center, 201 E. Fifth Street, Suite 800, Cincinnati, Ohio 45202
      Attorneys for Appellee, Goodwill Industries of the Miami Valley, Inc.

. . . . . . . . . .

FROELICH, P.J.

        **{¶ 1}**   Kelly Puterbaugh appeals from a judgment of the Miami County

Court of Common Pleas, which affirmed the decision of the Ohio Unemployment Compensation Review Commission that Puterbaugh was terminated from Goodwill Industries of the Miami Valley for just cause and thus was not entitled to unemployment compensation. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} The testimony and exhibits before the Unemployment Compensation Review Commission hearing officer reveal the following facts.

{¶ 3} Puterbaugh was employed by Goodwill from January 10, 2006, to December 5, 2012, when she was terminated. At the time of Puterbaugh's termination, she was an assistant store manager at the Northridge store. Goodwill terminated Puterbaugh's employment for activity that allegedly violated its code of ethics and other policies. That activity primarily consisted of driving her boyfriend, Scott Fine, to the Northridge Goodwill store, where he picketed Goodwill regarding a bedbug issue.

{¶ 4} Puterbaugh had been demoted from store manager to assistant store manager on July 13, 2012, allegedly due to poor store performance. In response to her demotion, Puterbaugh sent an email to management, in part expressing her belief that her demotion was "more [the] result of my refusal to half truth the bedbug issue rather than my abilities." Her email also indicated that Fine was going to picket the Goodwill store because "it was nasty to sell used clothes without washing them." Goodwill did not respond to Puterbaugh's email.

{¶ 5} Retail District Manager Roger Baldridge testified that Goodwill's practice is to have Terminix spray its stores every month, regardless of whether anyone sees a pest

problem, to throw away any item with pests or that "makes us nervous," and to spray Sterifab over anything that came into contact with those items. Baldridge stated that Puterbaugh could have come to him or the retail director (Baldridge's boss) if she had any workplace issues; they have an "open door" policy. He also stated that Goodwill has a confidential hotline that she could have called.

{¶ 6} On December 2, 2012, an all-employee meeting was held from 10:00 a.m. to 10:30 a.m. at the Northridge store. Puterbaugh was not scheduled to work that day, so she drove to the store to attend the meeting. Right before the meeting started, some employees noticed a gentleman (Fine) picketing on the sidewalk in front of the store. Fine held a sign saying not to shop at Goodwill because it has bedbugs. The employees reported the picketing to management. Following the meeting, employees saw Fine get into the car that Puterbaugh was driving, and the two left. Baldridge acknowledged that Fine was not on Goodwill property while he was picketing and that Puterbaugh transported Fine on her personal time.

{¶ 7} Baldridge stated that management employees are expected to look after the best interest of Goodwill. He stated that he would expect an employee to notify management ahead of time if he or she knew a protest would happen. Puterbaugh did not notify Goodwill in advance about Fine's December 2012 protest at the Northridge store, nor did she mention it while the picketing was occurring or afterward.

{¶ 8} Baldridge testified that Puterbaugh's actions violated several Goodwill policies. The conduct prohibited by the policies included "immoral and indecent conduct" on the worksite or on the premises; "intimidating, coercing, [or] interfering with"

management and other employees; soliciting and distributing literature unless authorized; posting notices or signs without permission; making "false, vicious or malicious statements" concerning the employer or its products; and not reporting ethics violations. Baldridge stated that Puterbaugh's activities were "tied to that type of activity," even though she did not picket personally.

{¶ 9} On December 4, 2012, Goodwill's loss prevention manager, Heath Schlagetter, talked with Puterbaugh during her work shift about the picketing. Puterbaugh acknowledged that Fine was her boyfriend, that she had driven Fine to the store, that she knew what he was planning to do, and that she drove him home afterward. Puterbaugh told Schlagetter that she knew Fine was going to have a sign that said Goodwill had bedbugs. Puterbaugh was immediately suspended. On December 7, 2012, Goodwill sent Puterbaugh a letter stating that she was terminated, effective December 5, 2012.

{¶ 10} Puterbaugh testified that she and Fine share a car and that she drove to the Northridge store on December 2, 2012, because she had a meeting. Puterbaugh stated that she knew Fine had a sign in the car, but she stated that Fine shops at Harbor Freight, which is next door to the Goodwill store. Puterbaugh testified that the signs had been in the car since July, and she did not know that Fine planned to picket the store on December 2, 2012. Puterbaugh did not notify Goodwill after the fact that her boyfriend had picketed the store. Puterbaugh believed that Fine's actions on December 2 should not be held against her when she merely transported him.

{¶ 11} After her termination, Puterbaugh applied for unemployment compensation. Her claim was denied. On February 8, 2013, the Director of the Ohio Department of Job

and Family Services issued a redetermination disallowing her application on the ground that she had been terminated for just cause. Puterbaugh appealed to the Review Commission. After a hearing, the Review Commission found that Puterbaugh was terminated for just cause because Puterbaugh's actions demonstrated an unreasonable disregard for her employer's best interest. The hearing officer reasoned: "Claimant argues that she had no knowledge that her boyfriend was going to picket that day. However, claimant acknowledged that she knew the sign was in the car. Claimant had told the employer previously that her boyfriend may picket. The evidence reveals that claimant acted in concert with her boyfriend and her acts were clearly against the employer's best interest."

{¶ 12} Puterbaugh appealed the Review Commission's decision to the Miami County Court of Common Pleas. The trial court found that the record supported the hearing officer's conclusion that Puterbaugh acted in concert with her boyfriend to picket the store and that her actions were clearly against the employer's best interest and in violation of the employer's policy, which was known to her. The trial court rejected Puterbaugh's claims and found that the Review Commission's decision was lawful, reasonable, and not against the manifest weight of the evidence.

{¶ 13} Puterbaugh appeals from the trial court's affirmance of the Review Commission's denial of unemployment benefits. She raises nine assignments of error, which we will address in a manner that facilitates our analysis.

## II. Just Cause and Standard of Review

{¶ 14} R.C. 4141.29 establishes the requirements for eligibility for unemployment compensation benefits. Under that statute, a claimant is not eligible for benefits if he or she

is discharged for "just cause in connection with the individual's work." R.C. 4141.29(D)(2)(a). "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985); *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 22. "Just cause for discharge may be established by proof that the employee violated a specific company rule or policy, * * * so long as the policy was fair and fairly applied." *Jones v. Bd. of Review*, 10th Dist. Franklin No. 93AP-430, 1993 WL 393908, *3 (Sept. 28, 1993).

**{¶ 15}** The "just cause" determination must be made in light of the legislative purpose underlying the Unemployment Compensation Act. *Williams* at ¶ 22.

"The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own."

* * *

The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

(Citations omitted.) *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d

694, 697-698, 653 N.E.2d 1207 (1995). Nevertheless, we keep in mind that the unemployment compensation statute must be liberally construed in favor of awarding benefits to the applicant. *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin*, 2d Dist. Clark No. 2006-CA-32, 2007-Ohio-1674, ¶ 10; R.C. 4141.46.

{¶ 16} "Each unemployment compensation case must be considered upon its particular merits in determining whether there was just cause for discharge." *Johnson v. Edgewood City School Dist. Bd. of Edn.*, 12th Dist. Butler No. CA2008-11-278, 2010-Ohio-3135, ¶ 14, citing *Warrensville Heights v. Jennings*, 58 Ohio St.3d 206, 207, 569 N.E.2d 489 (1991). The discharged employee bears the burden of persuasion to prove that he or she is entitled to unemployment compensation. *Silkert v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶ 36 (2d Dist.).

{¶ 17} An appellate court's scope of review in employment compensation appeals is quite limited. *Silkert* at ¶ 26. An appellate court may reverse the Unemployment Compensation Review Commission's determination of "just cause" only if it is "unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas* at paragraph one of the syllabus; R.C. 4141.282(H). "All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and cannot make factual findings or determine witness credibility." *Silkert* at ¶ 26; *see also Williams* at ¶ 20. The reviewing court must affirm the Review Commission's decision if it is supported by some competent, credible evidence. *Williams* at ¶ 20.

### III. Manifest Weight of the Evidence

{¶ 18} Puterbaugh's third, fourth, fifth, and sixth assignments of error all relate to

whether the Review Commission's decision is against the manifest weight of the evidence. They state:

> The decision was unlawful and against the manifest weight of the evidence because the Director, Hearing Officer, Review Commission and Miami County Common Pleas Court ignored the best and only independent evidence in the record to reach their decisions.

> The decision was against the manifest weight of the evidence because it was based in part on a finding that Plaintiff/Appellant failed to warn the company of pickets on the day in question at the store in question.

> The decision was unreasonable, unlawful and against the manifest weight of the evidence because the Director, Hearing Officer, Review Commission and Miami County Common Pleas Court applied the incorrect company policy to the case.

> It is unreasonable and against the manifest weight of the eivdence in the record for the Hearing Officer to ignore the conduct and obvious reason for said conduct of the witness.

{¶ 19} In these assignments of error, Puterbaugh asserts that she bears no responsibility for Fine's decision to picket the Goodwill store and that she had no means to stop it. Puterbaugh emphasizes that she and Fine shared a vehicle, that they shared insurance, and that she had no "legal means to stop Scott Fine from riding with her to Northridge." In her fourth assignment of error, Puterbaugh states that she warned Goodwill of Fine's potential picketing in her July 2012 email. Her fifth assignment of error asserts

that Goodwill's solicitation policy should be applied. Puterbaugh's sixth assignment of error concerns Schlagetter's failure to record his December 4, 2012 meeting with Puterbaugh, when Puterbaugh had asked for the meeting to be recorded.

{¶ 20} At the outset, we emphasize that it was the province of the hearing officer to consider the testimony and documentary evidence before her and to determine the credibility of the witnesses and the weight to be given to the evidence provided. Puterbaugh argues, for example, that Schlagetter (the loss prevention manager) failed to record the December 4, 2012 meeting with her. The failure goes to the credibility of Schlagetter's testimony, and we must defer to the hearing officer's credibility determinations on appeal.

{¶ 21} Upon review of the evidence before the hearing officer, we cannot conclude that the hearing officer's determination was against the manifest weight of the evidence. The hearing officer was presented with testimony that Puterbaugh drove Fine to the store, knowing that he had signs in the car and that he intended to picket the store. Fine picketed while Puterbaugh was at her meeting in the store, and he left with her when the meeting was over. Puterbaugh knew that Fine had picketed other Goodwill stores in the past. Puterbaugh did not warn Goodwill that Fine intended to picket, nor did she bring Fine's picketing at her store to management's attention. The record thus supports the Review Commission's finding that Puterbaugh "acted in concert with her boyfriend," and we must defer to that factual finding.

{¶ 22} Puterbaugh testified that she and Fine shared a vehicle, that she could not stop Fine from coming with her to the store on December 2, 2012, and that she did not know that Fine intended to picket the store that day. The Review Commission hearing officer's

findings reflect that she (the hearing officer) did not credit this testimony. Given the record as a whole, we cannot conclude that the hearing officer's determination that Puterbaugh acted in concert with Fine was against the manifest weight of evidence.

{¶ 23} Moreover, the record supports the conclusion that Puterbaugh's actions, as determined by the hearing officer, violated Goodwill's policies. Goodwill's Employee Conduct and Work Rules "provides some examples of conduct that may lead to disciplinary action up to and including termination of employment." Those examples include "[m]aking or publishing false, vicious, or malicious statements concerning * * * [Goodwill] or its products including engaging in malicious gossip or spreading malicious rumors" and violating any Goodwill rule or policy. Goodwill's Employee Code of Ethics states, in part, that employees will commit to the following:

> 1. I will conduct myself in a manner that merits the trust and support of the public, and that affects Goodwill/Easter Seals' reputation in a positive manner.
>
> * * *
>
> 10. I will take no actions that could benefit me personally at the unwarranted expense of Goodwill/Easter Seals, avoiding even the appearance of a conflict of interest. * * *

Puterbaugh was aware of these policies. Based on the record, the hearing officer concluded that Puterbaugh's actions violated Goodwill's policies, of which Puterbaugh was aware, and that Goodwill had just cause for her termination. We cannot find that the Review Commission's decision was unlawful, unreasonable or against the manifest weight of the

evidence.

{¶ 24}  Puterbaugh's third, fourth, fifth, and sixth assignments of error are overruled.

### IV. Record on Appeal

{¶ 25}  Puterbaugh's first, eighth and ninth assignments of error relate to the record on appeal.  They state:

>    The Director and Hearing Officer failed to take appropriate steps to develop a full and fair record.

>    Director's decision was unlawful as it was rendered without providing Plaintiff/Appellant access to or copies of her file.

>    Miami County Common Pleas Court erred when it overruled motion to correct the record.

{¶ 26}  Puterbaugh's first assignment of error claims that the hearing officer failed to develop a full and fair record, as required by R.C. 4141.28(C)(2), because the hearing officer did not allow testimony that Puterbaugh received bonuses while the store manager. R.C. 4141.281(C)(2) provides, in part:

>    * * *  In conducting hearings, all hearing officers shall control the conduct of the hearing, exclude irrelevant or cumulative evidence, and give weight to the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of serious affairs.  Hearing officers have an affirmative duty to question parties and witnesses in order to ascertain the relevant facts and to fully and fairly develop the record.  Hearing officers are not bound by

common law or statutory rules of evidence or by technical or formal rules of procedure. No person shall impose upon the claimant or the employer any burden of proof as is required in a court of law. * * *

{¶ 27} During the hearing, Baldridge testified that Puterbaugh had been demoted to assistant store manager in July 2012 due to "poor store performance." In response to Puterbaugh counsel's questions on cross-examination, Baldridge stated that Puterbaugh, as store manager, was entitled to receive bonuses based on store sales and profits, i.e, "numbers-driven variable." Goodwill's counsel objected to the question, and the hearing officer inquired about the question's relevance. Puterbaugh's counsel stated that he was responding to the testimony that Puterbaugh had performance problems, and he indicated that Puterbaugh had evidence that she received bonuses in April and July of 2012. The hearing officer responded that Puterbaugh was ultimately terminated for her activities related to December 2, 2012, i.e., her boyfriend's picketing, and that "we need to stay focused on the reasons for her termination." Puterbaugh's counsel withdrew the question regarding Puterbaugh's performance as store manager.

{¶ 28} The trial court rejected Puterbaugh's argument that the hearing officer failed to take appropriate steps to develop a full and fair record. The court noted that Puterbaugh was represented by counsel at the hearing, that the hearing officer did not exclude testimony (although she questioned whether the bonuses were a collateral issue), and it was "tacitly admitted by [Puterbaugh's] counsel that she was not terminated due to her job performance five months later." We agree with the trial court that the reasons for Puterbaugh's demotion in July 2012 were not relevant to whether Puterbaugh was

terminated for just cause in December 2012. The hearing officer did not abuse her discretion in questioning the relevance of counsel's questions regarding Puterbaugh's performance as store manager. Puterbaugh was not denied the opportunity to develop a full and fair record.

{¶ 29} In her eighth assignment of error, Puterbaugh claims that the decision of the director of the Ohio Department of Job and Family Services was unlawful, because it was rendered without providing her access to or copies of her file. The focus of this appeal is whether the Review Commission's decision, not the director's prior decision, is proper. Puterbaugh states that she received a copy of her file on January 18, 2013; the hearing before the Review Commission was held on March 7, 2013. Puterbaugh thus had access to her file prior to the Review Commission's hearing and decision. Her eighth assignment of error lacks merit.

{¶ 30} Puterbaugh's ninth assignment of error claims that the trial court erred in denying her "motion to complete and correct the record." Puterbaugh sought to add, pursuant to App.R. 9(E), three items: (1) "A request dated January 14th, 2013, for the name and e-mail address for the director so that [Puterbaugh] could file a complaint pertaining to a continuing refusal to provide copies of or access to her file;" (2) statements and videos from the security drive mentioned in "the synopsis" of Heath Schlagetter; and (3) "Laughter from Heath Schlagetter during his testimony at the telephone hearing indicating that he thought it was funny there was no recording despite [Puterbaugh's] attempt to do so." The trial court denied the motion, reasoning that it was required to determine Puterbaugh's appeal on the certified record, that R.C. Chapter 2506 does not apply to unemployment compensation

appeals, and App.R. 9 is not applicable.

{¶ 31} As noted by the trial court, the trial court's review of the Review Commission's decision is limited to the record certified by the Review Commission. R.C. 4141.282(H). The trial court did not have the authority to accept additional evidence. Accordingly, the trial court did not err in denying Puterbaugh's request to "complete" the record.

{¶ 32} Puterbaugh's first, eighth and ninth assignments of error are overruled.

## V. Constitutionality / Public Policy

{¶ 33} Puterbaugh's second and seventh assignments of error assert that the Review Commission's decision is unlawful because it violates public policy and is unconstitutional. The assignments of error state:

At least one code of ethics is unlawful because it violates Public Policy. The Miami County Common Pleas Court erred when it found otherwise.

Decision is Unconstitutional.

{¶ 34} In her seventh assignment of error, Puterbaugh claims that the Review Commission's decision is unconstitutional, because it allows Goodwill to "chill the free speech of a non-employee" and "restricts the movement of free people (a non-employee and an employee on personal time) on a public street and sidewalk with no due process." Puterbaugh's second assignment of error further asserts that the portion of Goodwill's Code of Ethics that requires employees to conduct themselves in a manner "that affects the employer's reputation in a positive manner" violates the public policy found in the First

Amendment. She states that the Code of Ethics does not allow employees to speak freely about issues, such as bedbugs, if the statements are unflattering to Goodwill.

{¶ 35}  As a general rule, the First Amendment to the United States Constitution protects citizens from government actions that abridge free speech. *E.g*, *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."). In the absence of state action, a claim generally does not lie against a private corporation for violating the First Amendment. *E.g.*, *Petrovski v. Federal Express Corp.*, 210 F.Supp.2d 943 (N.D.Ohio 2002); *Shevin v. Pathi*, 3d Dist. Seneca No. 13-02-20, 2002-Ohio-4457, ¶ 14; *Stephenson v. Yellow Freight Sys., Inc.*, 10th Dist. Franklin No. 99AP-77, 1999 WL 969817, *7 (Oct. 26, 1999); *Freeman v. Montessori School of Bowling Green, Inc.*, 6th Dist. Wood No. 93WD098, 1994 WL 476025, *3 (Sept. 2, 1994). Goodwill is a private employer, and there is no evidence in the record that state action was involved. Accordingly, we find no basis to conclude that Goodwill violated Puterbaugh's First Amendment free speech rights or acted in violation of the public policy found in the First Amendment (and thus lacked just cause) when it terminated Puterbaugh's employment.

{¶ 36}  Puterbaugh's second and seventh assignments of error are overruled.

### VI.  Conclusion

{¶ 37}  The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

**[Cite as *Puterbaugh v. Goodwill Industries of the Miami Valley, Inc.*, 2014-Ohio-2208.]**
Copies mailed to:

Kelly Puterbaugh
Robin A. Jarvis
Anthony J. Caruso
Rebecca L. Cull
Hon. Robert J. Lindeman