[Cite as *Tan v. Dir., of Ohio Dept. of Job & Family Servs.*, 2025-Ohio-2614.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MARY TAN | : | |
| | : | C.A. No. 30405 |
| Appellant | : | |
| | : | Trial Court Case No. 2024 CV 05029 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| DIRECTOR OF OHIO DEPARTMENT | : | Court) |
| OF JOB AND FAMILY SERV. ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellees | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 25, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

[[Applied Signature]]
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and LEWIS, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30405


MARY TAN, Appellant, Pro Se
DOUGLAS R. UNVER, Attorney for Appellees


HANSEMAN, J.

{¶ 1} Appellant, Mary Tan, appeals pro se from a trial court judgment that affirmed an administrative decision of the Unemployment Compensation Review Commission ("UCRC"). The UCRC had found that Tan was discharged from her employment with Fuyao American Glass, Inc. ("Fuyao"), with just cause. The UCRC, therefore, denied unemployment benefits for Tan.

{¶ 2} While Tan's assignments of error and argument are difficult to discern, she appears to claim that the hearing officer's decision was against the manifest weight of the evidence and was unreasonable, that the trial court failed to read the transcript, and that the hearing officer was not impartial. After reviewing the record, we find Tan's assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.


I. Facts and Course of Proceedings

{¶ 3} In April 2024, Fuyao discharged Tan from employment due to her violation of its policy against workplace violence. More specifically, Tan had indicated a desire for revenge against other employees, and notes were discovered shortly thereafter at Tan's workstation in which she discussed how to make atomic bombs and other harmful chemicals. Tan was initially granted unemployment benefits, but the decision was reversed by a hearing officer, who found Fuyao had discharged Tan with just cause. The UCRC then affirmed the hearing officer's decision. In September 2024, Tan filed a notice of

administrative appeal in the trial court, asking it to overturn the UCRC's decision and grant her unemployment compensation. Tan also gave notice of her appeal to the Director of the Ohio Department of Job and Family Services, to the UCRC Administrator, and to Fuyao.

{¶ 4} After the trial court set a briefing schedule, UCRC filed the certified transcript of the administrative proceedings in November 2024. Tan and UCRC then filed briefs and, on review, the court issued a decision affirming the denial of Tan's benefits. Tan timely appealed from the decision.

## II. Manifest Weight and Unreasonableness of the Hearing Officer's Decision

{¶ 5} From reading Tan's brief, her first assignment of error appears to be that the hearing officer's decision was against the manifest weight of the evidence and was unreasonable. In this regard, Tan contends: (1) the notes she wrote during work did not indicate a threat, i.e., a present intent to injure anyone; (2) Fuyao's workplace policy failed to define what actions constituted hostility or aversion toward an individual or a group; (3) Fuyao failed to uniformly apply its policy; and (4) Tan's actions during "idle time" at work did not materially and substantially affect Fuyao's interests.

{¶ 6} Under R.C. 4141.29(D)(2)(a), an individual is precluded from obtaining unemployment benefits if he or she "has been discharged for just cause in connection with the individual's work." Ohio courts have defined "just cause" as " 'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Irvine v. State Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985), quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist. 1975). Claimants have the burden of establishing they are entitled to unemployment benefits. *Id*.

{¶ 7} Deciding "what constitutes just cause must be analyzed in conjunction with the

legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is 'to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' " (Emphasis in original.) *Id*., quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223 (1964).

{¶ 8} However, "[t]he Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697-698 (1995). *Tzangas* also stressed that "the question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause." *Id*. at 698.

{¶ 9} After the UCRC completes its review, appeal is taken to the common pleas court, where " ' [i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.' " *Williams v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-2897, ¶ 20, quoting R.C. 4141.282(H). On further appeal, all appellate courts apply the same limited review as the common pleas court. *Id*. "Thus, a reviewing court may not make factual findings or determine a witness's credibility and must affirm the commission's finding

if some competent, credible evidence in the record supports it." *Id*.

**{¶ 10}** According to the evidence in the administrative file, Fuyao hired Tan in September 2022. At that time, Fuyao furnished Tan with a copy of its employee handbook. Tan acknowledged receipt and agreed she would read and comply with its terms. Administrative Transcript ("Tr."), 8 and 243. As relevant here, the handbook contained the following policy:

**3.5 Workplace Violence**

The safety and security of all associates is of primary importance to FGA. Acts or threats of physical or verbal violence (including intimidation and/or harassment and/or coercion) which involve or affect the Company and/or its associates, visitors, customers by anyone on the Company property or while conducting Company business will not be tolerated.

Prohibited conduct includes, but is not limited to the following:

• Threatening communication, whether verbal, written or electronic, or threatening physical gestures.

• Physical injury or potential physical harm, including behavior that creates a reasonable fear of harm, to another individual.

. . .

All associates are responsible for notifying management of any threats that they receive, witness, or they are told that another person witnessed or received. Additionally, associates are expected to report behavior that they reasonably believe poses a potential for workplace violence. . . .

Any associate responsible for conduct that violates any part of this policy will

be subject to discipline up to immediate discharge, as well as the possibility for referral to criminal prosecution.

. . .

Upon actions or behavior that may appear to violate this policy, the Company reserves the right to inspect and/or search any person or property on Company premises or property used while performing Company business.

(Emphasis in original.) Tr. at 34-35.

{¶ 11} The handbook contained the following further provisions:

**General Plant Rules - Most Serious Violations**

Violation of any of the following rules, because of their seriousness, may result in immediate discharge without a warning:

. . .

28. Use of threatening language toward a customer, vendor, management, or co-worker;

. . .

39. Fighting, assaulting or using any form of physical contact that may result in harm to another person. This includes, but is not limited to:

a. Threats and acts of violence against a person or property that alter employment conditions or create a hostile abusive or intimidating work environment; and

b. Use of abusive, malicious contemptuous or threatening language or conduct.

(Emphasis in original.) Tr. at 38.

{¶ 12} Tan worked at Fuyao as an inspector for defects in glass windshields. Her last

day of work was April 28, 2024. On that day, a fellow employee discovered a note at Tan's workstation which contained ingredients on how to make atomic materials, including materials like uranium, which is a radioactive metallic element. This employee brought the note to the attention of the shift supervisor who, for the safety and well-being of all team members, then reached out to Employee Relations and the safety team to help deal with the situation and to see what needed to be done next. This consultation involved the safety staff and Christopher Carmack, a Fuyao employee relations representative. The safety team was on site and suspended Tan while they investigated to see what had occurred and where the note came from. *Id*. at 241-242 and 244-245.

{¶ 13} The investigators looked through video footage and were able to see there was a note on Tan's workstation, and that around 5:00 p.m., Tan had the note in her hand, taking it to the workstation. Carmack had photos of that and a time-stamp of the photos. According to Carmack, the concern was about an atomic or nuclear bomb and the ingredients of a bomb. That created a hostile work environment, as an employee cannot speak or write about a bomb. A second note was also found in Tan's workbench. This note involved some sort of bleach liquid using organic compounds to make a harmful chemical reaction with fumes. *Id*. at 242, 248, and 249-250.

{¶ 14} Fuyao's investigation included gathering statements from team members, who mentioned Tan's concerning comments and odd behavior. A team member reported he had felt uncomfortable and that Tan's behavior was concerning. Tan had shared with the team that she had some science background, that she had a lot of chemical knowledge on how to create bombs and materials necessary to do so, and that she also had a plan for revenge. Tr. at 246-247, 251, and 213-218 (written statements from Tan's supervisor and a coworker). During her conversation with the coworker, Tan also mentioned in a "revenge tone" that

everyone lied to her and that everyone on the line was mean to her. *Id*. at 215.

{¶ 15} When Carmack interviewed Tan, she denied writing any notes, said she did not know what he was talking about, and threatened to sue Fuyao. However, a group of employer relations people and legal team members later compared a prior sample of Tan's handwriting with both notes found at her workstation. They found the handwriting and letters were nearly identical. *Id*. at 247. In the prior written statement made to Fuyao, Tan had also said that "Everyone bothers me when I'm working and it happens every day." *Id*. at 72 and 262.

{¶ 16} Carmack stated that there is never a time and a place for employees to use company time or materials to write notes on creating weapons, that Tan did not ask permission to use company time or items for personal use to create these notes, and that he had no idea why she would be writing the notes. Without knowing why Tan wrote the notes, there was no way Carmack could protect his employees. Based on his investigation and Tan's actions, Carmack had no option other than to discharge her from employment. *Id*. at 249 and 251.

{¶ 17} Contrary to her prior denial to Fuyao, Tan admitted during the unemployment hearing that she had written the notes. Concerning the atomic bomb note, Tan claimed that she had a discussion that day with a coworker about radon gas because a friend of hers was trying to buy a house. During this conversation, Tan also mentioned that she had taken a science class in her own country. Tan's story was that while waiting for her lunch break at work, she had nothing to do and tried to recall a science lesson she had a long time ago. Tan stated she wrote it down on her own paper and threw it away; she had no idea how Fuyao obtained the paper. During the hearing, Tan gave the same kind of explanation for writing down the bleach mixture. She claimed she was thinking of using it to clean her house

and tried to remember what she had previously learned in science class. Tr. at 257 and 259-260.

{¶ 18} After considering the evidence, the hearing officer found that Tan had been discharged with just cause. The officer found that Fuyao had presented "consistent and credible evidence in support of its position" and that its policies were "fair, applicable, and known" to Tan. *Id*. at 270. In addition, the officer stated that Tan "lacked an explanation for why she prepared these notes about a bomb and a malodorous solution at work while on the clock. She could have just as easily prepared these notes at home and left them there." *Id*. In addition, the officer stressed that Tan had "prepared these notes in English, not in another language she knew, and left them where they could be found by others and read in English. The fault is with [Tan]." *Id*.

{¶ 19} The hearing officer further found that Tan's "position also lacks credibility since as [Tan] is aware, not all matters in which employees engage are subject to a progressive disciplinary process; but instead, like fostering a hostile workplace, are subject to immediate termination under employer's policies." *Id*. at 270-271. Finally, the officer stated that Tan's failure to avoid engaging in inappropriate behavior like preparing notes, leaving them to be discovered by coworkers while discussing her knowledge of chemicals and mentioning revenge did not meet her employer's legitimate business interests. As a result, the officer reversed the prior decision to allow benefits. *Id*. Tan appealed to the UCRC, and it affirmed the hearing officer's decision.

{¶ 20} After reviewing the record and evidence from the hearing, the trial court upheld the UCRC decision. In particular, the court relied on the hearing officer's credibility determinations. Order Affirming the Decision of the Commission (Jan. 31, 2025) ("Order"), p. 4 and 6.

{¶ 21} As noted, "a reviewing court may not make factual findings or determine a witness's credibility . . . ." *Williams*, 2011-Ohio-2897, at ¶ 20. "[W]hen reviewing a decision of the Commission. . . , common pleas and appellate courts are precluded from making factual findings; the resolution of factual questions and issues of credibility are for the Commission, which acts as the fact-finder in unemployment compensation proceedings. A reviewing court cannot substitute its judgment for the board's factual findings but can only determine if the board's decision is supported by the evidence in the record." *Giles v. F & P Am. Mfg., Inc.*, 2005-Ohio-4833, ¶ 29 (2d Dist.), citing *Tzangas*, 73 Ohio St.3d at 696.

{¶ 22} Here, the decision was supported by the evidence in the record. Contrary to Tan's claim, Fuyao did not have to list every type of violence or threats of violence that might exist; the possibilities are endless. People reading the policy would understand they will create a hostile or intimidating work environment by expressing animosity toward coworkers, discussing their own scientific background in chemicals, and leaving notes in plain view about ingredients for making bombs (atomic or otherwise). Tan's story about making the note to remember chemical details about radon was inconsistent with her earlier denial of writing any notes and also implausible. The note itself specifically mentioned "to make atomic bomb (uranium)" and "Radium to make Nuclear Bomb." Tr. at 28. *See also* Appellant's Brief, p. 4 (noting the content of the atomic bomb note).

{¶ 23} Radon is defined as "both the radioactive, gaseous element produced by the disintegration of radium and the short-lived radionuclides that are decay products of radon." R.C. 3723.01; Adm.Code 3701-69-01(A)(43). Ohio has procedures for radon testing and licensing of those conducting such testing. *See* R.C. Chap. 3723 and Adm.Code Chap. 3701. Federal law also classifies radon as a hazardous air pollutant and regulates uranium mines, for example, which can produce such pollutants. *E.g., Grand Canyon Trust v. Energy*

*Fuels Resources (U.S.A.) Inc.*, 269 F.Supp.3d 1173, 1179 (D. Utah 2017). However, there is no plausible connection between radon and compiling lists of ingredients for making nuclear or atomic bombs.

{¶ 24} Furthermore, the threat of violence was present on the day the notes were discovered and was exacerbated by Tan's denial and lack of explanation for the events that occurred. Fuyao could have placed its other employees at future risk if it had failed to act. As a result, Fuyao's decision to terminate Tan was reasonable.

{¶ 25} Tan also argues that Fuyao did not uniformly apply its workplace violence policy. " 'Just cause for discharge may be established by proof that the employee violated a specific company rule or policy, . . . so long as the policy was fair and fairly applied.' " *Puterbaugh v. Goodwill Industries of the Miami Valley, Inc.*, 2014-Ohio-2208, ¶ 14 (2d Dist.), quoting *Jones v. Bd. of Rev.*, 1993 WL 393908, *3 (10th Dist. Sept. 28, 1993). However, Tan did not provide any evidence that Fuyao failed to apply its policy consistently or fairly. Despite Tan's claim in her brief to that effect, the record is silent on this point.

{¶ 26} In addition, Tan asserted that her actions during "idle time" did not substantially and materially affect Fuyao's interests. For the reasons the hearing officer mentioned and that we have also discussed, we disagree. The fact that employees are not directly performing a work task at a particular moment does not give them license to engage in behavior that harms or threatens other employees. Suppose, for example, that an employee shoots a coworker while the employee is walking to the restroom or to a lunchroom. No one would seriously argue that the employee's actions did not affect the employer's legitimate business interests.

{¶ 27} As a final point, we see no evidence that the trial court failed to read the transcript. In fact, the court's order repeatedly refers to the record. *See* Order at p. 1-4.

{¶ 28} Based on the preceding discussion, Tan's first assignment of error is overruled.

IV. Bias of the Hearing Officer

{¶ 29} Tan also alleges the hearing officer was biased. Concerning this point, Adm.Code 4146-11-01 provides that: "No hearing officer or member of the review commission shall participate in proceedings in any case in which the hearing officer or member has an interest which might prevent the hearing officer or member from conducting a fair hearing or reaching an impartial decision." "While due process entitles an individual before an administrative tribunal to receive a fair hearing before an impartial tribunal, a showing of substantial personal bias will be required before a hearing officer may be disqualified or the results of the hearing vacated. In practice this means a personal bias so extreme as to display clear inability to render a fair judgment." *Meadowbrook Care Ctr. v. ODJFS*, 2007-Ohio-6534, ¶ 25 (10th Dist.), citing *Staschak v. State Med. Bd. of Ohio*, 2004-Ohio-4650 (10th Dist.).

{¶ 30} Tan does not point to any evidence of bias other than her disagreement with the hearing officer's decision, and there is no evidence of personal bias in the record. Consequently, the second assignment of error is overruled.

IV. Conclusion

{¶ 31} Both of Tan's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.