[Cite as *Blake v. Unemp. Rev. Comm. Admr.*, 2017-Ohio-166.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CYNTHIA D. BLAKE

      Appellant

      v.

ADMINISTRATOR OF THE
UNEMPLOYMENT  :
REVIEW COMMISSION, et al.,


      Appellee

C.A. No.     27958


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2014 11 5227

DECISION AND JOURNAL ENTRY

Dated: January 18, 2017

---

KLATT, Judge.

{¶ 1}  Appellant, Cynthia D. Blake, appeals from a judgment of the Summit County Court of Common Pleas affirming two decisions from the Unemployment Compensation Review Commission ("UCRC"), which found Blake ineligible for unemployment compensation benefits. For the reasons that follow, we affirm.

## I.  Facts and Procedural History

{¶ 2}  On March 30, 2014, Blake filed an application for unemployment compensation benefits with appellee, the Ohio Department of Jobs and Family Services ("ODJFS") office of unemployment compensation, after she lost her full-time job with PNC Bank. On April 18, 2014, ODJFS granted Blake's application, and provided her with the weekly benefit amount of $418.

{¶ 3}  Blake has also been employed by appellee, Akron Beacon Journal Publishing Company, Inc. ("Beacon"), as a part-time mailer extra since September 11, 1995. Blake disclosed

her part-time job at Beacon in her application for unemployment compensation benefits. The April 18, 2014 determination of benefits noted that Blake was employed by Beacon, and stated that her "gross earnings" from Beacon "were less than the weekly benefit amount." (Apr. 18, 2014 Determination of Benefits.)

{¶ 4} On June 20, 2014, under case No. 2014-14133, Beacon informed ODJFS that Blake was refusing to be scheduled for work. Beacon noted that shifts were available for Blake to work, and that the work consisted of standard mailer extra duties "of loading preprints into the inserting machine and stacking bundles into carts." (June 20, 2014 Statements at 5.) Beacon explained that each mailer extra shift was 7.5 hours long, and that Blake received remuneration of $13.12 an hour. Beacon also noted that Blake had the highest seniority amongst the mailer extras, and thus would have had the first choice of shifts if she would allow Beacon to schedule her for work.

{¶ 5} On June 30, 2014, ODJFS issued a notice of determination on eligibility, finding that Blake had been overpaid benefits for the weeks ending on May 31, June 7, June 14, and June 21, 2014. The notice stated that Blake had not satisfied the requirements of R.C. 4141.29(A)(5), as she could not maintain that she was "unable to obtain suitable work." (June 30, 2014, Notice.)

{¶ 6} On July 29, 2014, Blake appealed the ODJFS determination to the UCRC. Blake asserted in her notice of appeal that, "[f]or the past 10 years or more [she has] been allowed by the [sic] to not be scheduled and remain open daily to work." (July 29, 2014 Notice of Appeal.) Blake stated that, because her union agreement permitted her to only call off from work twice before being terminated, she could not risk being scheduled to work, as she might have to call off if she received a job interview.

{¶ 7} Blake filed the union agreement along with her appeal to the UCRC. The union agreement states that mailer extras will "be permitted up to two emergency lay-offs after the

posting of the schedule," but does not define the phrase "emergency lay-offs." (Union Agreement at 14.) The agreement also provides that, if a mailer extra is "inactive during any 6 month period," they "lose all employment rights." *Id.* at 13-14.

**{¶ 8}** On August 12, 2014, the UCRC held a hearing on Blake's appeal. Beacon's employee relations manager, Lisa Bookwalter, testified on behalf of Beacon, and explained that Blake had last worked for Beacon on May 23, 2014. Bookwalter stated that, although Blake was supposed to "call in and tell [the union steward] when she's available" to work, about "two months ago she quit calling in to tell him her availability," and instead "told the union steward not to schedule her." (Aug. 12, 2014 Tr. 8-9.) Bookwalter explained that the union steward told her that Blake had asked him to not schedule her. *Id.* at 8. Bookwalter noted that there were "shifts available" to Blake, and that she could have been "scheduled any[where] from one to three shifts a week." *Id.*

**{¶ 9}** Blake admitted that, as a mailer extra, it was her responsibility to "call on Friday * * *, every Friday, you're to call to let them know what you're available for and what you could be scheduled for" the coming week. *Id.* at 19. Yet, Blake stated that "during the month of uh April and May I said until further notice, I am not to be scheduled," as she was "collecting unemployment and [was] seeking full time work." *Id.* at 18-19. Blake stated that the union steward told her "that anytime that we call, I am to come in and I said okay." *Id.* at 20.

**{¶ 10}** Bookwalter stated that the union called Blake for available shifts on May 27, May 28, May 29, and May 30, 2014, but that Blake "didn't answer four calls that week." *Id.* at 10. The union continued to try to contact Blake for available shifts in the following weeks as well, but Blake similarly did not answer her phone. Blake asserted that she had never been "contacted or said no to anybody on the phone that I wouldn't accept." *Id.* at 22. Bookwalter explained that she

determined which shifts were available to Blake by reviewing the weekly mailer extra schedule that was posted in the union office. Bookwalter explained that, "when the union steward calls to offer a shift, if she doesn't answer or she's not available, there's an NA on the calendar and * * *, that's how I know she was called for those shifts." *Id.* at 16. Blake confirmed that the mailer extra work offered to her was suitable work. *Id.* at 23.

**{¶ 11}** On September 5, 2014 the UCRC issued a decision finding that Blake had been overpaid benefits for the weeks of May 31, 2014 through June 21, 2014. The hearing officer found that Blake told the union steward in April to not schedule her until further notice, and found that there were a total of 12 shifts available for her to work during the weeks at issue. The hearing officer thus concluded that Blake could not "maintain she was unable to obtain suitable work as she did not accept all available employment," in violation of R.C. 4141.29(A)(5). (Sept. 5, 2014 Decision at 2.) The hearing officer stated that Blake was "ineligible from May 25, 2014 through August 16, 2014." *Id.*

**{¶ 12}** The second case at issue in this appeal, designated case No. 2014-15757, concerns the same benefits awarded to Blake on April 18, 2014, but involves a violation from the week ending on July 26, 2014. On August 4, 2014, Beacon informed ODJFS that Blake had informed the union steward that she was not to be scheduled for work during the week of July 26, 2014. Beacon noted that the union had called Blake on July 23, 2014 to offer her a shift, but that she did not answer her phone. The union called Blake again on July 24 and offered her a shift for July 25. Blake initially accepted the shift, but called back shortly after accepting, and stated that she could not work on the 25th as she had a job interview scheduled for that day.

**{¶ 13}** On August 6, 2014, the ODJFS Office of Unemployment Compensation issued a notice of determination on eligibility, finding Blake ineligible for benefits for the week ending on

July 26, 2014. On August 26, 2014, Blake appealed the notice of determination on eligibility to the UCRC.

{¶ 14} The UCRC held a hearing on the appeal on September 10, 2014; Bookwalter and Blake were the only witnesses to testify. Bookwalter noted that Blake was "called on Thursday, July 24 to work Friday, July 25," and that Blake had "accepted the shift and then she called off um like a half hour later." (Sept. 10, 2014 Tr. at 7-8.) Bookwalter further noted that Blake "could have been scheduled other shifts, but she was not scheduled any other shifts," because she had "asked the union steward not to schedule her." *Id.* at 8.

{¶ 15} Blake stated that she had "called in that Friday and" said that she "would be open to work," but that she could not "be scheduled," as she was still "looking for a full time job." *Id.* at 12-13. Blake explained that she did initially accept the shift for July 25th, but "called right back within 10 minutes and" stated that she had forgot she had an interview scheduled for 10:30 a.m. on July 25. *Id.* at 12.

{¶ 16} On September 11, 2014, the hearing officer issued a decision affirming ODJFS's August 6, 2014 determination on eligibility. The hearing officer found that, Blake had "informed the union steward that she was 'open to work,' but that she did not want to be placed on the schedule" due to her concern "that her employment would be terminated for calling off work." (Decision at 2.) The hearing officer further found that Blake initially accepted the shift for July 25, 2014, but "approximately 10 minutes after her initial conversation with the union steward," she called back and stated that she could not work because she had an interview for another job. *Id.* The hearing officer concluded that, by stating that she could not be scheduled, "claimant placed limitations on The Beacon Journal Publishing Company's ability to schedule her for hours during the week ending July 26, 2014." *Id.* As such, the hearing officer determined that Blake had not

met the requirements of R.C. 4141.29(A)(5), and noted that this ruling was consistent with the ruling in case No. 2014-14133.

{¶ 17} Blake appealed both UCRC decisions to the Summit County Court of Common Pleas on November 20, 2014. The UCRC filed the certified record of the administrative proceedings with the trial court on December 8, 2014.

{¶ 18} On July 30, 2015, Blake filed a motion to supplement the record with the audio recording of a November 3, 2014 hearing before the UCRC. The hearing related to Blake's unemployment compensation benefits, but concerned a violation from a different week than the weeks at issue in this appeal. Blake asserted in her motion that the audio of the November 3, 2014 hearing demonstrated Beacon "submitting unverified documents regarding claimants work availability and HR staff not following hearing officer request during proceeding to leave room while HR staff member give testimony." (July 30, 2015 Motion to Supplement.) Beacon opposed the motion.

{¶ 19} On August 25, 2015 the trial court issued a judgment entry, denying Blake's motion to supplement the record and affirming the two decisions from the UCRC. The court found that the motion to supplement was untimely and out of rule.

{¶ 20} Regarding the UCRC orders, the court initially addressed Blake's argument that the mailer extra work was not suitable for her. The court concluded that the work was suitable, "because (a) the work involves the same job Ms. Blake has done at [Beacon] for twenty years, and (b) Ms. Blake admitted the work was suitable." (Journal Entry at 5.) The court observed that the hearing officer "found several shifts were available at [Beacon]," and that Blake admitted that she "told the union steward not to schedule her because she was seeking full-time employment." *Id.* at 6. The court observed that the fact that Blake "wasn't required to accept all of the available shifts

for purposes of maintaining employment with [Beacon] did not relieve her of her burden of establishing her eligibility for unemployment compensation benefits." *Id.* at 9. The court concluded that Blake failed to establish that she was unable to obtain suitable work, pursuant to R.C. 4141.29(A)(5), and accordingly affirmed the decisions from the UCRC.

## II. Assignments of Error

{¶ 21} Appellant appeals, assigning the following errors for our review:

> [1.] The Common Pleas Court abusive discretion not allowing all evidence (supplemental motion) since the opening of employee-claimant unemployment claim. (ODJFS) erred to the prejudice of Cynthia D. Blake by citing that she was unable to obtain suitable work and Decision disallowing overpayment amount $1,672.00. The ODJFS for that decision is unlawful, unreasonable, and is contrary to manifest weight of evidence. A part-time, temporary assignment was not suitable work as a reasonable job choice once the claimant has lost his full-time job.
> [2.] The Common Pleas Court erred to prejudice of Cynthia D. Blake, by affirming ODJFS case 2014-01575 to not allow for full-time job interview and case 2014-01433. A claimant is entitle[d] to a reasonable amount of time to find new work with wages and fringe benefits equivalent to his or her most recent employer. Hearing officer did not consider the suitability of the alleged refusal of an offer work for interview that was reported on weekly claim. Nor did review board consider reasonable amount of time to find new work with wages and fringe benefits equivalent to his or her most recent employer. In addition to non-charged part-time employer Beacon Journal violating the terms and conditions of claimant employment per collective bargaining agreement.

{¶ 22} Although Blake's first assignment of error makes arguments about both the trial court's denial of her motion to supplement the record and the court's decision to affirm the orders from the UCRC, for ease of discussion, we will confine our analysis under the first assignment of error to the motion to supplement. We will address all of appellant's contentions regarding the UCRC orders under our analysis of the second assignment of error.

### III.     First Assignment of Error–Motion to Supplement

{¶ 23} Blake's first assignment of error asserts that the trial court erred by denying her motion to supplement the record with the audio recording of the November 3, 2014 hearing. "A trial court's grant or denial of a motion to supplement will not be overturned unless the court abuses its discretion." *Wolk v. Paino*, 8th Dist. No. 94850, 2011-Ohio-1065, ¶ 23. We find no abuse of discretion in the trial court's denial of the motion to supplement.

{¶ 24} R.C. 4141.282(H) provides that, when a claimant appeals a ruling from the UCRC to the court of common pleas, the court must "hear the appeal on the certified record provided by the commission." Indeed, in UCRC cases, the "trial court's standard of review is limited by statute to the record as certified by the commission," and the "commission is solely responsible for producing the record of its proceedings." *Univ. of Toledo Chapter of Am. Assn. of Univ. Professors v. Erard*, 6th Dist. No. L-14-1185, 2015-Ohio-2675, ¶ 22, citing R.C. 4141.282(H) and (F). *See also Puterbaugh v. Goodwill Industries of Miami Valley, Inc.*, 2d Dist. No. 2013 CA 39, 2014-Ohio-2208, ¶ 31 (noting that, because "the trial court's review of the Review Commission's decision is limited to the record certified by the Review Commission," the "trial court did not have the authority to accept additional evidence").

{¶ 25} The November 3, 2014 hearing audio was not included in the certified record transmitted to the trial court from the UCRC, because it was not a part of the record in either UCRC case at issue. Accordingly, as the trial court's review in UCRC cases is limited to the certified record, the trial court did not have the authority to supplement the record with the November 3, 2014 hearing audio. Furthermore, Summit County Court of Common Pleas Loc.R. 19.04 provides as follows:

> In all appeals where the submission of additional evidence is required or permitted by law, a motion to supplement the record shall be filed within fourteen (14) days after the filing of the record of proceedings, supported by affidavit requesting the submission of additional evidence and specifying the nature and type of additional evidence to be submitted and the reasons therefor. This section does not apply to unemployment compensation appeals, as RC 4141.282(H) provides that the only evidence the Court is permitted to review is the certified record provided by the Unemployment Compensation Review Commission.

{¶ 26} Thus, Loc.R. 19.04 specifically prohibited Blake from supplementing the certified record transmitted by the UCRC to the trial court. Moreover, as the UCRC filed the certified record on December 8, 2014, Blake's July 30, 2015 motion to supplement was well beyond the 14-day deadline stated in the general portion of Loc.R. 19.04.

{¶ 27} Based on the foregoing, Blake's first assignment of error is overruled.

**IV. Second Assignment of Error–UCRC Orders**

{¶ 28} In her second assignment of error, Blake asserts that the trial court erred by affirming the two orders from the UCRC.

{¶ 29} An interested party may appeal a decision from the UCRC to the common pleas court of the county where the party is a resident or was last employed, pursuant to R.C. 4141.282(A) and (B). The trial court is to hear the appeal upon the record as certified and provided by the UCRC. R.C. 4141.282(H). The court may only reverse, vacate, modify, or remand the decision to the UCRC if it finds that the UCRC's decision "was unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.282(H). Otherwise, the court is required to affirm. *Id*.

{¶ 30} R.C. Chapter 4141 does not distinguish between the scope of review for the common pleas court or the appellate court with respect to UCRC decisions. *See* R.C.

4141.282(H) and (I). Thus, in a review of a decision by the UCRC regarding eligibility for unemployment compensation benefits, an appellate court is bound by the same limited scope of review as the common pleas courts. *Irvine v. State of Ohio, Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985). Accordingly, an appellate court may only reverse an unemployment compensation eligibility decision by the UCRC if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H); *Tzangas, Plaka, & Mannos v. Admr., Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696-97 (1995).

{¶ 31} The resolution of factual questions is chiefly within the UCRC's scope of review. *Tzangas* at 696, citing *Irvine* at 18. Thus, when assessing a decision from the UCRC, the appellate court must refrain from making factual findings or weighing the credibility of witnesses, and must instead determine whether the evidence in the certified record supports the UCRC decision. *Id*. If the reviewing court finds that such support is found, then the court cannot substitute its judgment for that of the UCRC. *Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 551 (9th Dist.1996), citing *Wilson v. Unemp. Comp. Bd. of Rev.*, 14 Ohio App.3d 309, 310 (8th Dist.1984). "Moreover, 'every reasonable presumption must be made in favor of the [decision] and the findings of facts [of the review commission].' " *Roberts v. Hayes*, 9th Dist. No. CA 21550, 2003-Ohio-5903, ¶ 15, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

{¶ 32} Additionally, this court is required to focus "on the decision of the [UCRC], rather than the determination of the common pleas court." *Barilla v. Ohio Dept. of Job & Family Servs.*, 9th Dist. No. 02CA008012, 2002-Ohio-5425, ¶ 6, citing *Tenny v. Oberlin College*, 9th Dist. No. 00CA007661 (Dec. 27, 2000). The Supreme Court of Ohio has noted that applying the same standard of review at both the common pleas and appellate court levels does not result in a

de novo review standard. *Tzangas* at 697. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [UCRC's] decision." *Irvine* at 18, citing *Craig v. Bur. of Unemp. Comp.*, 83 Ohio App. 247, 260 (1st Dist.1948).

{¶ 33} Initially, we address Blake's argument that the "hearing officer weighed heavily on hearsay testimony," and that there were "no affidavits regarding the weekly schedules." (Appellant's brief, at 9.)  The hearing before the UCRC "is highly informal," and the "hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general." *Bulatko v. Dir., Ohio Dept. of Job & Family Servs.*, 7th Dist. No. 07 MA 124, 2008-Ohio-1061, ¶ 11. "Hearing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure." R.C. 4141.281(C)(2). "The object of the hearing is to ascertain the facts that may or may not entitle the claimant to unemployment benefits," and the hearing officer's discretion is "tempered only to the extent that he must afford each party an opportunity to present evidence that provides insight into the very subject of the dispute." *Bulatko* at ¶ 11, citing *Owens v. Admr., Ohio Bur. of Emp. Servs.*, 135 Ohio App.3d 217, 220 (1st Dist.1999).

{¶ 34} Bookwalter's references to hearsay statements and to the weekly work schedules aided the hearing officers in ascertaining the facts which would demonstrate whether Blake was entitled to unemployment compensation benefits.  Considering the highly informal nature of the proceedings before the UCRC, we find no error in either hearing officers reliance on the hearsay statements or the weekly work schedules. *See also Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44 (1982) (noting that "evidence which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account in proceedings * * * [before the UCRC] where relaxed rules of evidence are applied").

{¶ 35} Appellant asserts that there "was no lack of due diligence in employee-claimant seeking full-time work." (Appellant's brief, at 9.)  *See* R.C. 4141.29(A)(4)(a) (stating that "[n]o individual is entitled to * * * benefits for any week unless the individual * * * is actively seeking suitable work").    However, Blake's unemployment compensation benefits were not denied because she failed to actively seek full-time employment.  Rather, the UCRC found in both orders that Blake failed to establish that she was unable to obtain suitable employment under R.C. 4141.29(A)(5).

{¶ 36} R.C. 4141.29 provides conditions which apply to an individual's receipt of unemployment compensation benefits.   R.C. 4141.29(A)(5) provides that no individual is entitled to benefits for any week, unless the individual:

> **[i]s unable to obtain suitable work. An individual who is provided temporary work assignments by the individual's employer under agreed terms and conditions of employment, and who is required pursuant to those terms and conditions to inquire with the individual's employer for available work assignments upon the conclusion of each work assignment, is not considered unable to obtain suitable employment if suitable work assignments are available with the employer but the individual fails to contact the employer to inquire about work assignments.**

{¶ 37} Blake admitted at the August 12, 2014 hearing that the mailer extra job was suitable work for her.  Blake also admitted that it was her responsibility to contact the union steward every Friday and inform him of her availability for the following week. However, in April 2014, when Blake started receiving her unemployment compensation benefits, she called the union steward and told him "to not schedule [her] because [she's] collecting unemployment and [was] seeking full time work." (Aug. 12, 2014 Tr. at 18.)  Bookwalter confirmed at the August 2014 hearing, that Blake had "quit calling in to tell [the union steward] her availability."

*Id.* at 9. The evidence demonstrated that shifts were available each week for Blake to work, and that Blake, as the most senior mailer extra, could have had her choice of shifts.

{¶ 38} When an employee is required to inquire with their employer about available work assignments, R.C. 4141.29(A)(5) places an affirmative duty on them to do so. Accordingly, Blake's conduct of telling the union steward not to schedule her, and of not calling in to inquire about available shifts each week, violated R.C. 4141.29(A)(5).

{¶ 39} Blake's stated reason for refusing to be scheduled was because her union agreement permitted her to only "call off work * * * twice within a 12 month period." (Tr. at 20.) Blake explained she was fearful that, if she were scheduled to work, and was called for an interview after the schedule was posted, she would have to call off work and would "be penalized." *Id.* Ironically, Blake's system of not being scheduled for work and only being called as needed still resulted in her having to call off from the July 25 shift. Regardless, Blake failed to present sufficient evidence to support her contention that she could not be scheduled to work at Beacon.

{¶ 40} "A claimant bears the burden of proving her entitlement to unemployment compensation benefits." *Bulatko* at ¶ 31, citing *Kosky v. Am. Gen. Corp.*, 7th Dist. No. 03-BE-31, 2004-Ohio-1541, ¶ 9. *See also Cuyahoga Falls v. Stobbs*, 9th Dist. No. CA16113 (July 7, 1993) (noting, in a case concerning a R.C. 4141.29(A)(5) violation, that the claimant "was required to show that he was unable to obtain suitable work"). Blake testified at the August 12, 2014 hearing that "a lot of the job agencies and career resource places had been booking a lot of interviews for [her], so [she] wouldn't be able to overbook," by being scheduled to work at Beacon. (Tr. at 23.) However, Blake did not further explain what "a lot of interviews" entailed, nor did she delineate when or with what frequency these interviews would occur.

**{¶ 41}** Bookwalter testified that there were "Saturday and Sunday shift[s]" available to Blake. *Id.* at 26. Indeed, the schedule from the week ending on July 26, 2014 demonstrates that Blake could have been scheduled to work a Sunday shift beginning at 6:00 a.m. Accordingly, Blake could have worked weekend shifts at Beacon, and she presented no evidence to indicate that she ever had a job interview or job training scheduled on the weekends. *Compare Remen v. Admr.*, *Ohio Bur. of Emp. Servs.*, 8th Dist. No. 51068 (Sept. 25, 1986) (finding that the claimant was justified in quitting his part-time job, as he presented evidence demonstrating that "his 7-Eleven part-time job interfered with his ability to find a suitable job in his profession").

**{¶ 42}** The purpose of the Unemployment Compensation Act is "to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level." (Emphasis sic) *Irvine* at 17, quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223 (1964). *See also Salzl v. Gibson Greeting Cards*, *Inc.* 61 Ohio St.2d 35, 39 (1980); *Nowak v. Board of Review*, 150 Ohio St. 535, 537-38 (1948) (observing that the purpose of the law is to "assist those who are unfortunate enough to be involuntarily unemployed, but it is not intended to benefit those who capriciously refuse similar work for which they are reasonably fitted and for which they can receive wages prevailing for similar work in the community").

**{¶ 43}** Blake was fortunate enough to not be totally unemployed. Although she was unemployed, and thus entitled to unemployment compensation benefits, Blake was only partially unemployed due to her job at Beacon. *See Rini v. Unemp. Comp. Bd. of Review*, 9 Ohio App.3d 214 (8th Dist.1983); R.C. 4141.01(R)(4) (stating that an individual is "unemployed" if they are either "partially unemployed" or "totally unemployed"); R.C. 4141.02(M) (defining totally unemployed); R.C. 4141.01(N) (defining "partially unemployed" to mean that the "the total

remuneration payable to the individual for such week is less than the individual's weekly benefit amount"). Thus, pursuant to the purpose of the Unemployment Compensation Act, and the "statutory scheme providing for a person in her situation to continue working [part-time] and receive partial benefits," Blake was obligated to work her part-time job at Beacon when she was able to do so. *Sutfin v. Carlsbad Marketing & Communications, Inc.*, 2d Dist. No. 2455, 2011-Ohio-5988, ¶ 18. *See also Tonsing v. Bur. of Emp.*, 11th Dist. No. 1410 (Dec. 28, 1984) (noting that the "[a]vailability of partial compensation benefits would reduce the financial strain of only part-time work").

{¶ 44} Blake further asserts that the mailer extra job "was not suitable" work for her, because it was "below poverty level from Ms. Blake's previous full-time employer." (Appellant's brief, at 8.) "Whether work is 'suitable work' within the meaning of Section 4141.29, Revised Code, is a question of fact for determination by the trier of the facts." *Pennington v. Dudley*, 10 Ohio St.2d 90 (1967), paragraph two of the syllabus. R.C. 4141.29(F) provides that, to determine whether work is suitable work, the director must "consider the degree of risk to the claimant's health, safety, and morals, the individual's physical fitness for the work, the individual's prior training and experience, the length of the individual's unemployment, the distance of the available work from the individual's residence, and the individual's prospects for obtaining local work."

{¶ 45} As the mailer extra job is the same job Blake has performed at Beacon since 1995, it was suitable employment for Blake. *See Ward v. St. John Hosp. et al*, 8th Dist. No. 51321 (Dec. 4, 1986) (concluding that the offered work was suitable for the claimant, as it was a "part-time position in which she would do the same work she had been doing as a full-time employee at the same rate of pay"). Blake is physically able to perform the mailer extra job, she has the necessary

training and experience to do the job, and the mailer extra job presents no risk to her health, safety, or morals. Although there is no evidence in the record regarding the distance from Blake's residence to Beacon, as she has worked for Beacon since 1995, we presume the distance is not burdensome.

{¶ 46} Accordingly, pursuant to R.C. 4141.29(F), the mailer extra job was suitable work for Blake. *See also Trowbridge v. Bd. of Review*, 6th Dist. No. L-83-057 (June 3, 1983) (noting that "[i]n light of the appellee's status as a substitute teacher, * * * the Ohio Bureau of Employment Services did not err in finding that substitute teaching was suitable work for appellee"); *Compare Saulter v. Anchor Hocking Corp.*, 10th Dist. No. 86AP-73 (June 17, 1986) (where the claimant was offered work as "a packer," which "required appellant to lift and stack two thousand boxes that weighted approximately fifty pounds each," and the claimant had previously attempted to work as a packer but found the job "too strenuous," the court concluded that "the packer job was unsuitable").

{¶ 47} Blake contends that she was not given "a reasonable amount of time to find new work," and asserts that "[w]ithin 6 weeks claimant['s] unemployment benefits had been denied to seek full-time work unable to obtain." (Appellant's brief, at 9.) However, Blake's part-time job at Beacon was not meant to be her full-time job, or to replace her search for full-time employment. Indeed, ODJFS knew of Blake's job at Beacon when they awarded her weekly unemployment compensation benefits. Working at Beacon has been Blake's "part time job for the past 20 years as well as [her] working a full time job." (Aug. 12, 2014 Tr. at 20.) Accordingly, as Blake has worked both a full-time job and her part-time job at Beacon for many years, Blake was capable of working as little as one weekend shift each week at Beacon, while continuing to diligently pursue her search for full-time employment throughout the week.

{¶ 48} Blake asserts that, in case No. 2014-15757, the hearing officer "did not consider the suitability of the alleged refusal of an offer work for interview that was reported on weekly claim." (Appellant's brief, at 10.) However, the basis for the UCRC's decision in case No. 2014-15757 was not that Blake had refused an offer of work due to a previously scheduled interview. Rather, the basis for the hearing officer's decision was that Blake had informed the union steward that she could not be scheduled for work that week. The hearing officer concluded that, by telling the union steward she could not be scheduled, Blake "placed limitations on The Beacon['s] * * * ability to schedule her for hours during the week ending July 26, 2014," and she was therefore "ineligible for benefits." (Decision at 2.)

{¶ 49} Although Blake's union contract and prior practices at Beacon may have allowed her to refuse to be scheduled for work, in order to continue to receive unemployment compensation benefits, Blake had to establish her entitlement to those benefits. R.C. 4141.29(A)(5) required that Blake be unable to obtain suitable employment, and further provided that, if she received temporary job assignments from her employer, she was required to call in and inquire about available assignments. By telling the union steward that she was not to be scheduled, and by refusing to call in and inquire about available shifts, Blake failed to comply with R.C. 4141.29(A)(5).

{¶ 50} Based on the foregoing, we find that the orders from the UCRC were supported by the manifest weight of the evidence, and are neither unreasonable nor unlawful. Accordingly, Blake's second assignment of error is overruled.

V.    **Conclusion**

{¶ 51} Having overruled Blake's first and second assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

WILLIAM A. KLATT
FOR THE COURT

TYACK, J.
BROWN, J.
CONCUR.

(Klatt, J., Tyack, J., and Brown, J., of the Tenth District Court of Appeals, sitting by Assignment.)

APPEARANCES:

CYNTHIA D. BLAKE, pro se, Appellant.

MICHAEL DEWINE, Attorney General, and SUSAN M. SHEFFIELD, Assistant Attorney General, for Appellee.

MATTHEW R. KISSLING, Attorney at Law, for Appellee.